FILED (DROP BOX)

SEP 27 2022

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY _____ DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. SIDESOLVE LLC,<br><br>Plaintiff,<br><br>v.<br><br>DOCKLIGHT BRANDS, INC.,<br><br>Defendant. | NO. 2:22-cv-01371-BJR<br><br>COMPLAINT AND JURY DEMAND<br><br>**Filed Under Seal**<br>pursuant to<br>31 U.S.C. § 3730(b)(2) |

## NATURE OF THE ALLEGATIONS

1. Relator Sidesolve LLC brings this action on behalf of itself and the United States of America against Defendant Docklight Brands, Inc. for violations of the federal False Claims Act, 31 U.S.C. §§ 3729 *et seq.*

2. This action seeks to recover funds that were loaned to Defendant through the federal Government's Paycheck Protection Program ("PPP") and forgiven as a result of false applications.

3. Sidesolve LLC is a company that uses data to investigate large-scale corporate fraud. Its goal is to use the technology it is developing to protect individuals on private healthcare plans. It is currently developing its technology using public databases. It uses computational statistics to match entities across multiple resources such as databases, social media, corporate filings,

COMPLAINT AND JURY DEMAND - 1

Teller & Associates, PLLC
1139 34th Ave
Seattle, WA 98122
(206) 324-8969  Fax: 860-3172

and other sources. From this broader picture, it finds fraud leads, which it follows up with a more traditional manual investigation. In sum, Sidesolve LLC uses its expertise and proprietary technology to both collect the scattered pieces of the fraud puzzle and also to put them together into a complete picture of the alleged fraud.

4.      While using its technology to search for potential PPP loan fraud in data released by the SBA, Relator Sidesolve LLC came across Docklight Brands, Inc., which had applied for and received a PPP loan and forgiveness despite being ineligible for PPP funding.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this action pursuant to 31 U.S.C. § 3732(a) and 28 U.S.C. §§ 1331, 1345.

6.      Venue is proper in this district under 28 U.S.C. §§ 1391(b) and 31 U.S.C. § 3732(a), as Defendant transacts business in this jurisdiction and violations of the False Claims Act described herein occurred in this district.

## PARTIES

7.      Relator Sidesolve LLC is a company that uses data to investigate scaled corporate fraud.

8.      Defendant Docklight Brands Inc. ("Docklight") has a principal office address of 2724 6th Ave. South, Suite 203, Seattle, WA 98134.

9.      Docklight is formerly a wholly owned subsidiary of Privateer Holdings, Inc., a private equity firm that invests in the cannabis industry. In February 2019, Docklight became a fully independent company.

10.     Docklight's primary stockholders and officers are Michael Blue, Christopher Moore, Christian Groh, Damian Marano, and Adam Amsel.

11.     Docklight is a cannabis brand holding company focused on developing consumer cannabis brands and products. It functions as an intellectual property holding company that develops and licenses brands and products to cannabis producers and distributors.

12. Docklight's portfolio of cannabis brands includes Marley Natural®, a brand of cannabis products and smoking accessories.

13. Marley Natural cannabis—such as Wedding Pie, which has a THC content of 26.34%, and Superglue, which has a THC content of 32.31%—is available for purchase in dispensaries in California (and possibly Oklahoma).

14. Marley Natural smoking accessories are available for purchase nationwide online at marleynaturalshop.com.

## THE PAYCHECK PROTECTION PROGRAM

15. During the COVID-19 pandemic, Congress passed the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"). Section 1102 of the CARES Act contains a program called the Paycheck Protection Program ("PPP"), a program administered by the U.S. Small Business Administration ("SBA") to provide economic relief to small businesses nationwide adversely impacted by the coronavirus pandemic.

16. Section 1102 of the CARES Act temporarily permitted SBA to guarantee 100% of the PPP loans. Section 1106 of the CARES Act provided for forgiveness of up to the full principal amount of qualifying loans guaranteed under the PPP.

17. The CARES Act gives lenders delegated authority to process loan applications for PPP funding. SBA allowed lenders to rely on certifications of the borrowers in order to determine eligibility of the borrower and use of loan proceeds, and to rely on specified documents provided by the borrower to determine qualifying loan amount, and eligibility for loan forgiveness.

18. Lenders were compensated by the federal government via processing fees based on the balance of the financing outstanding at the time of final disbursement, in the following amounts:

- Five (5) percent for loans of not more than $350,000;
- Three (3) percent for loans of more than $350,000 and less than $2,000,000; and
- One (1) percent for loans of at least $2,000,000.

COMPLAINT AND JURY DEMAND - 3

Teller & Associates, PLLC
1139 34th Ave
Seattle, WA 98122
(206) 324-8969  Fax: 860-3172

19. Borrowers were later able to seek forgiveness of the loans if the funds were used for eligible payroll costs, payments on business mortgage interest payments, rent, or utilities during either the 8- or 24-week period after disbursement.

## FACTUAL ALLEGATIONS

20. On April 12, 2020, Docklight was approved by Cross River Bank for a $492,050 PPP loan.

21. Public records indicate that Docklight listed its industry on its loan application as "Offices of Other Holding Companies."

22. As of November 5, 2020, the entire loan, plus interest, was forgiven. The total amount forgiven was $494,719.

23. Version one of the PPP Borrower Application Form, effective April 2, 2020, required the applicant to certify in good faith that, inter alia:

> The Applicant is eligible to receive a loan under the rules in effect at the time this application is submitted that have been issued by the Small Business Administration (SBA) implementing the Paycheck Protection Program under Division A, Title I of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) (the Paycheck Protection Program Rule).
>
> The Applicant is not engaged in any activity that is illegal under federal, state or local law.
>
> I further certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects. I understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 USC 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 USC 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a federally insured institution, under 18 USC 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000.

24. Docklight must have made these certifications to receive PPP funding, and those certifications were false and material statements when made by Docklight.

25. At all relevant times, Docklight Brands, Inc. was both a Direct Marijuana Business and Indirect Marijuana Business (collectively, a Marijuana-Related Business), as defined by the SBA, and, thus, was not eligible to receive a PPP loan.

26. Effective April 1, 2019, the SBA issued SOP 50 10 5(K), which set forth requirements for lenders seeking to participate in SBA lending programs. This SOP "[i]ncorporated policy changes included in SBA Policy Notice 5000-17057 concerning the eligibility of marijuana-related businesses," which explained that business engaged in illegal activity—including "Applicants that make, sell, service, or distribute products or services used in connection with illegal activity, unless such use can be shown to be completely outside of the Applicant's intended market"—are ineligible for SBA loans. Specifically, Direct Marijuana Businesses, Indirect Marijuana Businesses, and certain Hemp-Related Businesses were ineligible for SBA loans because "federal law prohibits the distribution and sale of marijuana, financial transactions involving a marijuana-related business would generally involve funds derived from illegal activity. Therefore, businesses that derive revenue from marijuana-related activities or that support the end-use of marijuana may be ineligible for SBA financial assistance."

27. On August 2, 2019, the SBA issued Information Notice Control No. 6000-19005, Subject: Guidance on Grantees Providing Assistance to Marijuana-Related Businesses. Control No. 6000-19005 loosened restrictions on hemp-related businesses but retained exclusions on marijuana-related businesses:

> Because federal law prohibits the distribution and sale of marijuana, financial transactions involving a marijuana-related business would generally involve funds derived from illegal activity. Therefore, businesses that derive revenue from marijuana-related activities or that support the end-use of marijuana may be ineligible for SBA-funded technical assistance. The question of whether a particular business is eligible for assistance under an SBA program must be determined on an annual, case-by-case basis and depends upon the nature of the business' specific operations.
>
> A Direct Marijuana Business is a business that grows, produces, processes, distributes, or sells marijuana or marijuana products, edibles, or derivatives, regardless of the amount of such activity. This applies to recreational use and

> medical use even if the business is legal under local or state law where the applicant business is or will be located.
>
> An Indirect Marijuana Business is a firm that derived any of its gross revenue for the previous business year (or, if the firm is a start-up, projects to derive any of its gross revenue for the next business year) from sales to Direct Marijuana Businesses of products or services that could reasonably be determined to aid in the use, growth, distribution, enhancement or other development of marijuana. Examples of Indirect Marijuana Businesses include firms that… Sell smoking devices, pipes, bongs, inhalants, or other products primarily designed, intended, or marketed to facilitate marijuana consumption.
>
> …
>
> Finally, as to the issue of Cannabidiol (CBD) and products containing CBD, in practice CBD may be derived from either marijuana or hemp. When CBD is derived from marijuana, it is a Schedule 1 controlled substance under the Controlled Substances Act (21 U.S.C. § 801 et seq.). This means that firms, that develop or market CBD and CBD products derived from marijuana, would be considered Direct Marijuana Businesses as defined above and would thus not be eligible to participate in SBA technical assistance programs.

28. At the beginning of the PPP program, the SBA further clarified that marijuana-related businesses would not be eligible for PPP funding. For example, on March 23, 2020, in response to a question "Are cannabis companies eligible?" for EIDL loans, the SBA tweeted from its @SBAPacificNW account: "With the exception of businesses that produce or sell hemp and hemp-derived products (Agriculture Improvement Act of 2018, Public Law 115-334), marijuana-related businesses are not eligible for SBA-funded services (OMB, 2 C.F.R. § 200.300)."

29. In response to a follow-up question about the cited regulation, the SBA tweeted "[The regulation] says 'to ensure that federal funding is expended and associated programs are implemented in full accordance with U.S. statutory and public policy requirements.' In short, it's because marijuana is not federally legal & SBA is a federal agency."

30. Interim Final Rule, 85 FR 20811, effective April 15, 2020 but first published by the SBA on April 2, 2020, stated "You are ineligible for a PPP loan if, for example… [y]ou are engaged in any activity that is illegal under Federal, state, or local law."

**COMPLAINT AND JURY DEMAND - 6**

Teller & Associates, PLLC
1139 34th Ave
Seattle, WA  98122
(206) 324-8969  Fax: 860-3172

31. Docklight's PPP loan application included false statements material to the receipt of the loan, and eventual forgiveness of the loan, including that it does not engage in illegal activity.

32. Docklight's false PPP loan application fraudulently induced the lender to provide the loan, which in turn caused the United States to pay it a processing fee of 3% of the loan amount, or approximately $14,761.50.

33. At the very least, after it was approved for the PPP loan, Docklight should have been alerted by subsequent guidance issued by the SBA that it had been ineligible for PPP funding and should have repaid the loan instead of seeking and receiving loan forgiveness.

34. Instead, Docklight not only kept the PPP funds, but it applied for and received forgiveness of those funds under false pretenses, damaging the United States in the amount of the loan plus interest.

## COUNT I
## VIOLATIONS OF 31 U.S.C. § 3729–FEDERAL FCA

35. Relator hereby incorporates and realleges herein all other paragraphs as if fully set forth herein.

36. As set forth above, Defendant knowingly presented or caused to be presented false or fraudulent claims for payment or approval, in violation of 31 U.S.C. § 3729(a)(1)(A).

37. As set forth above, Defendant knowingly made, used, or caused to be made or used, false records or statements material to false or fraudulent claims, in violation of 31 U.S.C. § 3729(a)(1)(B).

38. As set forth above, Defendant knowingly made, used, or caused to be made or used a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the Government, in violation of the False Claims Act, 31 U.S.C. § 3729(a)(1)(G).

39.  Due to Defendant's conduct, the United States Government has suffered substantial monetary damages and is entitled to recover treble damages and a civil penalty for each false claim. 31 U.S.C. § 3729.

40.  Relator is entitled to reasonable attorneys' fees, costs, and expenses. 31 U.S.C. § 3730(d)(1).

## PRAYER FOR RELIEF

WHEREFORE, Relator prays for judgment against Defendant:

On behalf of the United States:

a) awarding the United States treble damages sustained by it for each of the false claims or improperly retained payments;

b) awarding the United States a maximum civil penalty for each of the false claims, records, or statements;

c) awarding Relator the maximum share of the proceeds of this action and any alternate remedy or the settlement of any such claim;

d) awarding Relator litigation costs, expenses, and reasonable attorneys' fees; and

e) granting such other relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Relator hereby respectfully demands trial by jury on all issues and counts triable as of right before a jury.

DATED this 26th day of September, 2022.

*/s/ Stephen A. Teller*
Stephen A. Teller, WSBA #23372

Jason Marcus (applying for *pro hac vice*)
Georgia Bar No. 949698

**COMPLAINT AND JURY DEMAND - 8**

1  **Bracker & Marcus LLC**
2  3355 Lenox Rd., Suite 660
   Atlanta, Georgia 30326
3  Tel: (770) 988-5035
   Fax: (678) 648-5544
4  Jason@FCACounsel.com

5  Attorneys for Relator Sidesolve LLC

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**COMPLAINT AND JURY DEMAND - 9**

Teller & Associates, PLLC
1139 34th Ave
Seattle, WA 98122
(206) 324-8969  Fax: 860-3172