# Exhibit A

## SETTLEMENT AGREEMENT

This Settlement Agreement (Agreement) is entered into among the United States of America, acting through the United States Department of Justice and on behalf of the United States Small Business Administration ("SBA") (collectively the "United States"), Docklight Brands, Inc. (Docklight), and Sidesolve LLC (Sidesolve or Relator) (hereafter collectively referred to as "the Parties"), through their authorized representatives.

## RECITALS

A. Docklight is a Delaware corporation headquartered in Seattle that developed and sold hemp derived products, and licensed certain marks for use in connection with state-licensed cannabis products.

B. On September 27, 2022, Sidesolve filed a qui tam action in the United States District Court for the Western District of Washington captioned *United States, ex rel. Sidesolve LLC v. Docklight Brands, Inc.*, No. 2:22-cv-01371-JNW, pursuant to the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3730(b) (the "Civil Action"). The United States will intervene in the Civil Action for the purposes of settlement.

C. The SBA is an independent agency of the United States government that provides aid, counsel, and assistance to small businesses and entrepreneurs. The Coronavirus Aid, Relief, and Economy Security Act (CARES Act), Section 1102, vested the SBA with the responsibility of managing the PPP, under SBA's 7(a) Loan Program. The PPP is intended to provide economic relief to small businesses nationwide adversely impacted by COVID-19.

D.  To be eligible for a first draw PPP loan, a business or entity must certify that it "is not engaged in any activity that is illegal under federal, state or local law." SBA Form 2483 (4/20).

E.  The United States contends that it has certain civil claims against Docklight arising from its application and receipt of Paycheck Protection Program Loan #3745097106, on April 12, 2020, from Cross River Bank, of which $494,719.00 was forgiven. Docklight certified that it was eligible for this PPP loan even though it derived revenues from third parties engaged in cannabis-related activities. Businesses that engage in any illegal activity under federal, state or local law are ineligible for SBA financial assistance. 13 C.F.R. § 120.110(h). That conduct is referred to below as the Covered Conduct.

F.  Relator claims entitlement under 31 U.S.C. § 3730(d) to a share of the proceeds of this Settlement Agreement and to Relator's reasonable expenses, attorneys' fees and costs.

G.  Docklight does not admit that it engages or engaged in any illegal activities under federal, state, or local law, and does not admit liability or wrongdoing in this matter.

To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the above claims, and in consideration of the mutual promises and obligations of this Settlement Agreement, the Parties agree and covenant as follows:

## TERMS AND CONDITIONS

1.  Docklight shall pay to the United States $989,438.00 (Settlement Amount), of which $494,719.00 is restitution, by electronic funds transfer pursuant to

2

written instructions to be provided by the United States Attorney's Office for the Western District of Washington. Docklight's payment shall be due in full immediately on the Effective Date of this Agreement.

2. Conditioned upon the United States receiving the Settlement Amount and as soon as feasible after receipt, the United States shall pay $148,416.70 to Relator by electronic funds transfer (Relator's Share) as soon as feasible after receipt of the payment.

3. Within thirty (30) days of the Effective Date of this Agreement, Docklight shall pay to Relator $22,000.00 for expenses and attorneys' fees and costs pursuant to 31 U.S.C. § 3730(d). Immediately upon execution of this Agreement, Relator shall provide wire instructions to Docklight in order to effectuate this payment.

4. Subject to the exceptions in Paragraph 6 (concerning reserved claims) below, and upon the United States' receipt of the Settlement Amount, the United States releases Docklight from any civil or administrative monetary claim the United States has for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; or the common law theories of breach of contract, payment by mistake, unjust enrichment, and fraud.

5. Subject to the exceptions in Paragraph 6 below, and upon the United States' receipt of the Settlement Amount, Relator, for their self and for their heirs, successors, attorneys, agents, and assigns, releases Docklight from any civil monetary claim the Relator has on behalf of the United States for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733.

6. Notwithstanding the releases given in Paragraph 4 of this Agreement, or any other term of this Agreement, the following claims and rights of the United States are specifically reserved and are not released:

    a. Any liability arising under Title 26, U.S. Code (Internal Revenue Code);

    b. Any criminal liability;

    c. Except as explicitly stated in the Agreement, any administrative liability or enforcement right, or any administrative remedy, including the suspension and debarment rights of any federal agency;

    d. Any liability to the United States (or its agencies) for any conduct other than the Covered Conduct;

    e. Any liability based upon obligations created by this Agreement; and

    f. Any liability of individuals.

7. Relator and its heirs, successors, attorneys, agents, and assigns shall not object to this Agreement but agree and confirm that this Agreement is fair, adequate, and reasonable under all the circumstances, pursuant to 31 U.S.C. § 3730(c)(2)(B). Conditioned upon Relator's receipt of the Relator's Share, Relator and its heirs, successors, attorneys, agents, and assigns fully and finally release, waive, and forever discharge the United States, its agencies, officers, agents, employees, and servants, from any claims arising from the filing of the Civil Action or under 31 U.S.C. § 3730 relating

to this Civil Action, and from any claims to a share of the proceeds of this Agreement and/or the Civil Action.

8.   Relator, for itself, and for its heirs, successors, attorneys, agents, and assigns, releases Docklight, and its officers, agents, and employees, from any liability to Relator arising from the filing of the Civil Action, or under 31 U.S.C. § 3730(d) for expenses or attorneys' fees and costs.

9.   Docklight waives and shall not assert any defenses Docklight may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Agreement bars a remedy sought in such criminal prosecution or administrative action.

10.   Docklight fully and finally releases the United States, its agencies, officers, agents, employees, and servants, from any claims (including attorneys' fees, costs, and expenses of every kind and however denominated) that Docklight has asserted, could have asserted, or may assert in the future against the United States, its agencies, officers, agents, employees, and servants, related to the Covered Conduct or the United States' investigation or prosecution thereof.

11.   Docklight fully and finally releases Relator and its officers, directors, principals, successors, attorneys, agents, and assigns from any claims (including attorneys' fees, costs, and expenses of every kind and however denominated) that Docklight has asserted, could have asserted, or may assert in the future against Relator, related to the Civil Action and Relator's investigation and prosecution thereof.

12. a. Unallowable Costs Defined: All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47) incurred by or on behalf of Docklight, and its present or former officers, directors, employees, shareholders, and agents in connection with:

(1) the matters covered by this Agreement;

(2) the United States' audit and civil investigation of the matters covered by this Agreement;

(3) Docklight's investigation, defense, and corrective actions undertaken in response to the United States' audit and civil investigation in connection with the matters covered by this Agreement (including attorneys' fees);

(4) the negotiation and performance of this Agreement;

(5) the payment Docklight makes to the United States pursuant to this Agreement and any payments that Docklight may make to Relator, including costs and attorneys fees,

are unallowable costs for government contracting purposes (hereinafter referred to as Unallowable Costs).

b. Future Treatment of Unallowable Costs: Unallowable Costs will be separately determined and accounted for by Docklight, and Docklight shall not charge such Unallowable Costs directly or indirectly to any contract with the United States.

c. Treatment of Unallowable Costs Previously Submitted for Payment: Within 90 days of the Effective Date of this Agreement, Docklight shall identify and repay by adjustment to future claims for payment or otherwise any

Unallowable Costs included in payments previously sought by Docklight or any of its subsidiaries or affiliates from the United States. Docklight agrees that the United States, at a minimum, shall be entitled to recoup from Docklight any overpayment plus applicable interest and penalties as a result of the inclusion of such Unallowable Costs on previously-submitted requests for payment. The United States, including the Department of Justice and/or the affected agencies, reserves its rights to audit, examine, or re-examine Docklight's books and records and to disagree with any calculations submitted by Docklight or any of its subsidiaries or affiliates regarding any Unallowable Costs included in payments previously sought by Docklight, or the effect of any such Unallowable Costs on the amount of such payments.

    14. Docklight agrees to cooperate fully and truthfully with the United States' investigation of individuals and entities not released in this Agreement. Upon reasonable notice, Docklight shall encourage, and agrees not to impair, the cooperation of its directors, officers, and employees, and shall use its best efforts to make available, and encourage, the cooperation of former directors, officers, and employees for interviews and testimony, consistent with the rights and privileges of such individuals. Docklight further agrees to furnish to the United States, upon request, complete and unredacted copies of all non-privileged documents, reports, memoranda of interviews, and records in its possession, custody, or control concerning any investigation of the Covered Conduct that it has undertaken, or that has been performed by another on its behalf.

    15. In exchange for valuable consideration provided in this Agreement, Docklight and Relator acknowledge the following:

a. In evaluating whether to execute this Agreement, the Parties intend that the mutual promises, covenants, and obligations set forth herein constitute a contemporaneous exchange for new value given to Docklight, within the meaning of 11 U.S.C. § 547(c)(1), and the Parties conclude that these mutual promises, covenants, and obligations do, in fact, constitute such a contemporaneous exchange.

b. The mutual promises, covenants, and obligations set forth herein are intended by the Parties to, and do in fact, constitute a reasonably equivalent exchange of value.

c. The Parties do not intend to hinder, delay, or defraud any entity to which Docklight was or became indebted to on or after the date of any transfer contemplated in this Agreement, within the meaning of 11 U.S.C. § 548(a)(1).

d. If any of Docklight's payments or obligations under this Agreement are avoided for any reason (including but not limited to, through the exercise of a trustee's avoidance powers under the Bankruptcy Code) or if, before the Settlement Amount is paid in full, Docklight or a third party commences a case, proceeding, or other action under any law relating to bankruptcy, insolvency, reorganization, or relief of debtors seeking any order for relief of Docklight's debts, or to adjudicate Docklight as bankrupt or insolvent; or seeking appointment of a receiver, trustee, custodian, or other similar official for Docklight or for all or any substantial part of Docklight's assets:

(i) the United States may rescind the releases in this Agreement and bring any civil and/or administrative claim, action, or proceeding against Docklight for the claims that would otherwise be covered by the releases provided in Paragraph 4 above;

(ii) the United States has an undisputed, noncontingent, and liquidated allowed claim against Docklight in the amount of $1,484,157, less any payments received pursuant to Paragraph 1 of this Agreement, provided, however, that such payments are not otherwise avoided and recovered from the United States by a receiver, trustee, creditor, custodian, or similar official;

(iii) if any payments are avoided and recovered by a receiver, trustee, creditor, custodian, or similar official, the United States shall not be responsible for the return of any amounts already paid by the United States to the Relator; and

(iv) if, notwithstanding subparagraph (iii), any amounts already paid by the United States to the Relator pursuant to Paragraph 2 are recovered from the United States in an action or proceeding filed by a receiver, trustee, creditor, custodian, or similar official in or in connection with a bankruptcy case that is filed within two years of the Effective Date of this Agreement or of any payment made under Paragraph 1 of this Agreement, Relator shall, within thirty days of written notice from the United States to the undersigned Relator's counsel, return to the United States all amounts recovered from the United States.

    e.    Docklight agrees that any civil and/or administrative claim, action, or proceeding brought by the United States under Paragraph 17.e is not subject to an "automatic stay" pursuant to 11 U.S.C. § 362(a) because it would be an exercise of the United States' police and regulatory power. Docklight shall not argue or otherwise contend that the United States' claim, action, or proceeding is subject to an automatic stay and, to the extent necessary, consents to relief from the automatic stay for cause under 11 U.S.C. § 362(d)(1). Docklight waives and shall not plead, argue, or otherwise raise any

defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any such civil or administrative claim, action, or proceeding brought by the United States within 120 days of written notification to Docklight that the releases have been rescinded pursuant to this paragraph, except to the extent such defenses were available on September 27, 2022.

16. This Agreement is intended to be for the benefit of the Parties only.

17. Docklight agrees to entry of a Consent Judgment in the Civil Action, in the form attached hereto as Exhibit A ("Consent Judgment"). The United States may move *ex parte* for entry of the Consent Judgment as soon as this Agreement is effective.

18. Docklight waives the 30-day stay of execution on a judgment provided by Federal Rule of Civil Procedure 62(a) and the 30-day demand for payment requirement under 28 U.S.C. 3205(b)(1)(B). The United States may immediately enforce payment of the full amount due under the Agreement and Consent Judgment via writ of garnishment or any other legal process.

19. Each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement, except as provided in Paragraph 3 above.

20. Each Party and signatory to this Agreement represents that it freely and voluntarily enters into this Agreement without any degree of duress or compulsion.

21. This Agreement is governed by the laws of the United States. The exclusive jurisdiction and venue for any dispute relating to this Agreement is the United States District Court for the Western District of Washington. For purposes of construing this Agreement, this Agreement shall be deemed to have been drafted by all Parties to

this Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

22. This Agreement constitutes the complete agreement between the Parties. This Agreement may not be amended except by written consent of the Parties.

23. The undersigned counsel represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

24. This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

25. This Agreement is binding on Docklight's successors, transferees, heirs, and assigns.

26. This Agreement is binding on Relator's successors, transferees, heirs, and assigns.

27. All parties consent to the United States' disclosure of this Agreement, and information about this Agreement, to the public.

28. This Agreement is effective on the date of signature of the last signatory to the Agreement (Effective Date of this Agreement). Facsimiles of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

THE UNITED STATES OF AMERICA

DATED: _____ BY: _____
Matt Waldrop
Assistant United States Attorney
Western District of Washington

*Digitally signed by JAMES WALDROP
Date: 2023.12.11 09:55:05 -08'00'*

Docklight Brands, Inc.

DATED: 12/7/2023 BY: _____
Michael Blue
Director

DATED: 12/07/2023 BY: _____
Jeffrey B. Coopersmith
Corr Cronin LLP
Counsel for Docklight Brands, Inc.

Sidesolve - RELATOR

DATED: 12/8/23 BY: _____
Katy Levinson
CEO, Sidesolve LLC

DATED: 12/8/23 BY: _____
Jason Marcus
Bracker & Marcus LLC
Counsel for Sidesolve LLC

12